Swing, J.
In our judgment the mortgage of Mrs. Graf is a valid and subsisting lien against the premises in litigation. Archbishop Purcell, at the time he gave the mortgage, was the *446 owner of the legal title coupled with an equitable interest in the land to the extent of over $20,000. This gave him the right to assign or mortgage the property to the extent of his equitable interest. It seems to us that the decision of the Supreme Court in the Mannix case, in which it is held that the assignment to Mannix carried with it the property assigned to the extent of the equitable interest held by Purcell settles this point.
The mortgage being good .at the time given, we are unable to see how it has in any way become invalidated by the acts of its holder. The mortgage was duly recorded, and from that time it became a lien with notice to the world. It has not been paid, and no one has parted with his money through any representations of its holder that it was not a lien. It being conceded that the mortgage is valid as of the •date of record, there is no question but what it is the first lien.
We are further of the opinion that the novation notes involved in this cause are not subrogated to the rights of Archbishop Purcell.
We have gone over this cause a number of times, and have spent a great deal of time in the consideration of this question. The question is not free from doubt, but our judgment is that these notes do not fall within the principle of the law of subrogation. Purcell was the holder of an interest in this property. The holder of these notes held notes against Purcell. Purcell wanted his claim against the property paid. The holders of the notes against Purcell were induced to part with claims against Purcell, and take the notes of the congregation or the person representing this congregation. The transaction, as far as Purcell was concerned, simply amounted to the payment of this claim against the property. He did not intend to keep his claim against the property alive by transferring it to these note holders. As to the note holders we see nothing in the transaction which leads us to think *447 that they thought they were stepping into the shoes of Purcell as to his claims on the property While Purcell held his claim against the property, the claims of these note holders against him were personal merely — they held no claim through him against this property except as they might work it out after personal judgment against him.
The note holders took the notes of the congregation in lieu of their notes against Purcell, and they took these notes with the knowledge and understanding that the claim of Purcell against the congregation was paid in full. Prucell’s claim was not to be kept alive by the transaction, on the contrary it was to be paid These note holders did not seek to get Purcell’s claim against this property, but what they wanted and what they got were the notes of the congregation, through their pastor, discharged of the claim of Purcell. There can be no claim made that these note holders did not get all that they thought they were getting. The doctrine of the law of subrogation is that it is a rule founded 'in equity and natural justice. Its most familiar application is where one furnishes money to pay off incumbrances on land and takes an incumbrance, which later proves defective, the party will then be subrogated to the rights of the valid lien against all but innocent purchasers for value. In such case the party parts with his money upon the understanding and belief that he is getting a valid lien on the property, and not getting it. Equity steps in and says that owing to the mistake the party shall be subrogated to the rights of the valid lien discharged by his money, and but for the belief that he was getting an other valid lien, he would not have parted with his money.
But here no such state of facts exists. While these note holders furnished the money or its equivalent, to discharge the lien of Purcell against this property, the intent c£ the parties, as shown by the transaction, was not only to discharge the lien of Purcell, but there was no intention to take *448 any other lien in its place. The note holders wanted the notes of the congregation discharged from any claim of Purcell, and this they got. There was no error or mistake of fact as to what the parties were doing or getting. The mistake was simply this: that as it now transpires the congregation cannot meet all its obligations, and these note holders are asking that they be given a lien on the land, something which they did not attempt, as we look at it, to get at the time.
JRoellcer & Jelke, for Margaret Leydon, Ann Manion, and other creditors.
Stephens, Lincoln & Smith, for Mrs. Graf and other creditors.
(reo. J. Murray & D. S. Oliver, for Michael Schultz and other creditors.
The case, it seems to us, would be like a person furnishing money to one to payoff an incumbrance, and thus, without seeking or wanting to take a lien on the property discharged, takes the individual note of the party. The law will not subrogate the holder of the note to the rights of the discharged lien. The mistake, if any, is a mistake of judgment, and not of fact; and the law will not relieve as against it.
We find there areno other liens against the property other than the lien of Mrs. 'Graf. Decree accordingly, and cause remanded to court of common pleas for execution..